Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/04/2024 09:08 AM CDT

- 771 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
317 NEBRASKA REPORTS
STATE EX REL. COUNSEL FOR DIS. v. VANDERFORD
Cite as 317 Neb. 771

STATE OF NEBRASKA EX REL. COUNSEL FOR DISCIPLINE,
RELATOR, V. CHRISTINE VANDERFORD, RESPONDENT.

___ N.W.3d ___

Filed October 4, 2024.    No. S-23-527.

1. **Disciplinary Proceedings: Appeal and Error.** Because attorney discipline cases are original proceedings before the Nebraska Supreme Court, the court reviews a referee's recommendations de novo on the record, reaching a conclusion independent of the referee's findings.

2. ____: ____. In a disciplinary proceeding, when a referee makes an express determination about the relative credibility of witnesses, the Nebraska Supreme Court gives weight to that determination in its de novo review, but is not bound by it.

3. **Disciplinary Proceedings.** Violation of a disciplinary rule concerning the practice of law is a ground for discipline.

4. ____. The basic issues in a disciplinary proceeding against an attorney are whether discipline should be imposed and, if so, the appropriate discipline under the circumstances.

5. ____. To determine whether and to what extent discipline should be imposed in an attorney discipline proceeding, the Nebraska Supreme Court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in the practice of law.

6. ____. The purpose of a disciplinary proceeding against an attorney is not so much to punish the attorney as it is to determine whether it is in the public interest that an attorney be permitted to practice, which question includes considerations of the protection of the public.

7. ____. With respect to the imposition of attorney discipline, each attorney discipline case must be evaluated in light of its particular facts and circumstances.

8. ____. For purposes of determining the proper discipline of an attorney, the Nebraska Supreme Court considers the attorney's actions both

- 772 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. VANDERFORD
Cite as 317 Neb. 771

underlying the events of the case and throughout the proceeding, as well as any aggravating or mitigating factors.

9. ____. The propriety of a sanction in an attorney discipline case must be considered with reference to the sanctions imposed in prior similar cases.

Original action. Judgment of suspension.

Kent L. Frobish, Assistant Counsel for Discipline, for relator.

Robert B. Creager, of Anderson, Creager & Wittstruck, P.C., L.L.O., for respondent.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Per Curiam.

## INTRODUCTION

This is an attorney discipline case in which the only question before this court is the appropriate discipline. The Counsel for Discipline of the Nebraska Supreme Court, the relator, brought formal charges against Christine Vanderford, the respondent, generally concerning exploitation of a vulnerable adult, J.R.K., for whom the respondent served as a guardian. A court-appointed referee considering only the issue of appropriate discipline recommended generally that the respondent be suspended from the practice of law, retroactively, from the time she was suspended on January 27, 2020, to the date this court files its opinion. The referee also recommended a probationary period to follow reinstatement. Certain facts herein are based on the referee's report, and in addition, we take judicial notice of the appellate record in *State v. Vanderford*, 312 Neb. 580, 980 N.W.2d 397 (2022).

We granted a joint motion for judgment on the pleadings with respect to the facts. We directed the parties to brief the issue of discipline. As explained below, we order that the respondent be suspended from the practice of law in the State of Nebraska for the period that began with her temporary

- 773 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. VANDERFORD
Cite as 317 Neb. 771

suspension on January 27, 2020, and ended on the date this opinion was filed.

## STATEMENT OF FACTS

The respondent was admitted to the practice of law in Nebraska on September 17, 2002. At all times relevant to these proceedings, the respondent was engaged in the practice of law in Lincoln, Nebraska. Pursuant to Neb. Ct. R. § 3-302, the respondent is under the jurisdiction of the Committee on Inquiry of the First Judicial District (Committee).

*Felony Conviction.*

On December 5, 2019, in the district court for Lancaster County, Nebraska, in case No. CR 19-1343, the respondent was charged with exploitation of a vulnerable adult (a Class IIA felony) and theft by deception, $5,000 or more (a Class IIA felony). The State later amended count I to abuse of a vulnerable adult (a Class IIIA felony) and count II to theft by unlawful taking, $5,000 or more (a Class IIA felony). After a bench trial, the respondent was found guilty of "Count I: Abuse of a Vulnerable Adult, a Class IIIA Felony." The court found the respondent "not guilty of Count II: Theft by unlawful taking, $5,000 or more." The respondent was sentenced to a 5-year term of probation to include incarceration for 90 days in the county jail.

The respondent appealed her conviction and sentence, and on October 14, 2022, we affirmed the judgment of the district court. *State v. Vanderford, supra*. Following our opinion, the district court issued an order of probation. The respondent's 90-day commitment was deferred until August 10, 2023. However, on August 1, the district court issued an order waiving the scheduled commitment of the respondent on the recommendation of the probation officer.

*Initiation of Attorney Discipline Proceedings.*

On January 27, 2020, the respondent's license to practice law was temporarily suspended by the Nebraska Supreme

- 774 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
317 NEBRASKA REPORTS
STATE EX REL. COUNSEL FOR DIS. v. VANDERFORD
Cite as 317 Neb. 771

Court in case No. S-19-1080. The temporary suspension concerned criminal charges regarding the respondent's mother, who was in a nursing facility, and arose out of contentions between the respondent and the nursing facility. These criminal charges were eventually dismissed.

The respondent's license to practice law remains suspended. She has not practiced law since that time.

On January 13, 2023, the respondent signed a waiver of her right to have the complaint against her in the present matter reviewed by the Committee. The respondent consented to the direction by the chair of the Committee that the relator file formal charges with the Nebraska Supreme Court consistent with the complaint filed with the Committee. On January 30, the chair of the Committee accepted the respondent's waiver and, pursuant to Neb. Ct. R. § 3-309(H)(4) (rev. 2011), directed the relator to file formal charges against the respondent. On July 12, the respondent was formally charged with violations of the Nebraska Rules of Professional Conduct and her oath of office as an attorney, Neb. Rev. Stat. § 7-104 (Reissue 2022). The charges arose from the respondent's September 2020 felony conviction concerning exploitation of a vulnerable adult. These formal charges give rise to the instant appeal.

The respondent filed an answer in which she admitted the factual allegations contained in the formal charges but denied that she violated her oath of office as an attorney or Neb. Ct. R. of Prof. Cond. § 3-508.4(a) and (b) (rev. 2016) of the Nebraska Rules of Professional Conduct.

*Referee Hearing.*

A referee was appointed, and a hearing was held in December 2023. At the hearing, the parties, by agreement, stipulated to the facts of the case set forth above. The respondent testified extensively about her life circumstances before, during, and after her criminal conviction. At the time of the hearing, the respondent was 51 years of age and had no prior disciplinary record.

- 775 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. VANDERFORD
Cite as 317 Neb. 771

During her first 4 years of practicing law, the respondent served clients in areas of estate planning, guardianship and conservatorship, business development, and entity creation. Although she sometimes shared office space with other lawyers, in substance she was a solo practitioner throughout her career.

In her practice handling guardianship and conservatorship cases, the respondent primarily set up the guardianships or conservatorships, but did not administer them. In this context, she came to represent the vulnerable adult J.R.K., who would become the subject of the criminal case in which the respondent was convicted.

The respondent represented Rachel K. and Richard K., the mother and stepfather respectively of J.R.K., an autistic person with several other mental health conditions. Rachel and Richard did not have a prior relationship with the respondent at the time they retained her legal services in 2011. After Rachel passed away, J.R.K. wanted to change her name to Richard's last name to have some better connection to her stepfather, as he was her only remaining relative living in Nebraska. Richard did not object. The respondent sought a legal name change for J.R.K., and it was approved.

J.R.K. is an adult woman with developmental and mental disabilities. She also had some physical ailments. Due to these disabilities, she receives Social Security disability income and qualifies for Medicaid benefits, including vocational and residential services. During the relevant time period, J.R.K. lived with, and was assisted in her daily activities by, an extended family home provider, who was paid a daily contract rate by the State of Nebraska. J.R.K. also earned income from working at her part-time jobs. The respondent testified that J.R.K. sometimes had difficult emotional or violent behaviors.

In the early years of the respondent's representation of Rachel and Richard, she had infrequent contact with J.R.K. J.R.K. lived at home with Rachel and Richard and had already qualified for and received Social Security disability

payments, and the respondent had not been involved in obtaining those benefits.

Rachel and Richard had tried to find a home placement for J.R.K. but were unsuccessful because of J.R.K.'s behaviors. When they were appointed guardians and conservators, it was to help find living arrangements for J.R.K. and to manage her limited income. They did not involve the respondent in preparing reports. They occasionally asked the respondent questions but did not involve her in the paperwork.

J.R.K.'s natural father was also disabled, and he did not accept that J.R.K. was disabled. When he died, he left some assets to J.R.K., including an individual retirement account. This complicated J.R.K.'s "disability income independent living situation and Medicaid eligibility." Rachel and Richard engaged the respondent to set up a self-settled "Special Needs Trust" to mitigate these complications. A second trust was later created by the respondent for Rachel and Richard because additional assets were discovered and the additional assets had different tax implications.

The respondent was then asked to terminate the conservatorship in 2011. The respondent testified that it was her belief all of the assets were to flow through the trust to support J.R.K., since her assets were only investments and Social Security disability benefits at the time. Rachel and Richard continued to file guardianship reports but not conservatorship reports after the conservatorships were terminated. The respondent testified that she believed that the rules for guardians and conservators had changed between that time and the present day. Rachel and Richard's reports were much less detailed when made in their capacity as guardians than they were when made in their capacity as conservators.

Rachel was largely unsuccessful at setting up extended home placements for J.R.K. By 2014, Rachel was in failing health and began pleading with the respondent to become J.R.K.'s guardian once Rachel passed away. Rachel believed

- 777 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. VANDERFORD
Cite as 317 Neb. 771

that Richard was not up to the task. The respondent claimed that Rachel asked her to help Richard as J.R.K.'s guardian when Rachel passed away, because they "respect[ed] and believe[d] in" her.

Following Rachel's death, Richard became J.R.K.'s sole guardian, was trustee on various accounts, and was apparently not up to the task. According to the respondent, Richard was overwhelmed, did not understand Rachel's recordkeeping, and could not perform as guardian. Respondent claimed she reluctantly became coguardian to J.R.K. A guardian ad litem was appointed, and after an investigation, the respondent was eventually appointed as guardian.

As an attorney, the respondent had never previously served as a guardian or conservator for any other individual.

According to respondent, she had access to all accounts at the bank that were managed by Richard.

The respondent contended that Richard implored her to take on a greater role in J.R.K.'s life. There were four extended family home placements in the 3½ years that the respondent was actively involved in the coguardianship.

According to her testimony, the respondent was experiencing significant personal, financial, and health-related problems. She had difficulties with her marriage and demands on her time from family, including her husband, sister, and elderly and disabled mother. Her husband had limited income and had family problems as well. The respondent, through her legal practice, provided most of her family's income. The respondent's marriage ended in 2015 to 2016, just as she was taking on more duties for J.R.K. While separated from her ex-husband, with whom she was still close, the respondent was trying to refinance their farm property with him. The respondent's ex-husband later died, causing further trauma.

In 2016, the respondent was severely injured in an automobile accident. She experienced a series of significant medical problems, operations, and healing complications. There is no

- 778 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. VANDERFORD
Cite as 317 Neb. 771

dispute that her injuries and subsequent medical problems were major and long-lasting. The respondent also had insurance and litigation issues relating to the automobile accident.

Increasingly, the respondent became involved with J.R.K. personally, to build the familial-type relationship desired by Rachel. The respondent took J.R.K. to medical appointments and on outings, including to a pumpkin patch and other activities. Many of these outings were done at the respondent's expense. J.R.K. was demanding and sometimes texted the respondent 20 times a day.

The respondent testified that generally, she was not billing for everything she was doing with J.R.K. However, she billed for a particularly hectic period, from February to June 2016, when J.R.K.'s situation was particularly demanding and J.R.K. was in crisis.

The respondent also accompanied J.R.K. on a trip to Florida to visit J.R.K.'s half brother. According to the respondent, only Richard and the respondent were authorized to administer antianxiety medication to J.R.K. Neither Richard, J.R.K.'s extended family home provider, nor anyone else was available to go on the trip with J.R.K. The respondent went on the trip to escort J.R.K., manage her medication, drive, and otherwise assist her on the aircraft and during the trip. According to the respondent, Richard preapproved compensation for the respondent billed at $500 per day, or $4,000 total.

According to the respondent, she essentially served as J.R.K.'s surrogate mother and there were not sufficient funds in the guardianship and trust accounts to pay the respondent's fees. The respondent incurred charges posted to her account but was not being paid. Some invoices were submitted on a flat fee basis, and some were based on her hourly rate as a lawyer. In this timeframe, J.R.K.'s funds were used to pay for J.R.K.'s expenses and were insufficient for legal fees. After J.R.K. received some proceeds from the estate of her grandmother, the respondent and Richard discussed satisfaction of the respondent's outstanding legal bill. At one point,

- 779 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
317 NEBRASKA REPORTS
STATE EX REL. COUNSEL FOR DIS. v. VANDERFORD
Cite as 317 Neb. 771

the outstanding bill from the respondent was over $20,000. The respondent received a significant portion of the outstanding bill from the trust. The payment was flagged and reported to Adult Protective Services.

The respondent's payments to herself out of accounts on which she was trustee resulted in the criminal charges against her for theft and exploitation of a vulnerable adult discussed above. The respondent did not obtain court approval for payments to herself. In this regard, she testified in the criminal case, "I had a good faith intentional belief that these trusts allowed for the trustees to make any payments on the behalf of professional services without court supervision. It was the old way of doing things with these Special Needs Trusts." During Rachel's life, she had paid the respondent out of these accounts. The respondent believed that the termination of the conservatorship removed the "Special Needs Trusts" from judicial supervision and that the trust would not operate like the guardianship accounts.

The respondent claimed that she had a standing agreement with Rachel and Richard that when she did things required to attend to J.R.K.'s needs, she would be paid her legal rate. The respondent testified that she performed all the services she invoiced for and more.

*Letters of Support.*

The evidence adduced before the referee included letters of support for the respondent. The respondent previously worked for a former Nebraska Attorney General for several years as a runner, a receptionist, a campaign coordinator, and a campaign manager, and after the respondent finished law school, she was an assistant attorney general. The former Attorney General for whom the respondent worked is aware of the formal charges and supports reinstatement of her license to practice law. The letters of support speak collectively to the respondent's character and suggest a high probability she would not reoffend.

- 780 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. VANDERFORD
Cite as 317 Neb. 771

*The Respondent's Statements.*

The respondent testified to her plans should her license be reinstated. She currently works as a paralegal to the general counsel of a North Carolina company that is a leading corporation in the "[v]apor and CBD industry." She works with leases, employment issues, garnishments, and the like. She hopes to continue working with her current employer in Nebraska and potentially to seek a license to practice law in North Carolina, where the business is headquartered. She does not intend to return to private practice and would prefer to remain in the business world. The company's employees, including the general counsel, several officers, and the president and chief executive officer, submitted letters in support of the respondent.

The referee found that the testimony of the respondent was truthful and accurate. The referee emphasized his reliance on the personal statement of facts as claimed by respondent in exhibit 25 in the record and as also related in the transcript. The referee emphasized the following personal statement, set forth in full:

I wanted to take this opportunity to express my sincere regret for my conduct in this matter. I loved being a lawyer and helping people. To be convicted of a crime and to lose my license to practice law while trying to fulfill my obligations and duties to [J.R.K.'s] finances is crushing. It has been a life-changing event — financially and emotionally.

Since my conviction and suspension I lost everything — my marriage to my husband and best friend, my legal practice, all of my savings and investments. I suffered the loss of my reputation in the community, my clients, my employees, the respect of my professional peers and former classmates, countless "friends" — the list goes on. I had no income. My car was repossessed. Since, December 2020, I have started the process of rebuilding my entire life, living with my sister, who is a single mother with two sons.

- 781 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. VANDERFORD
Cite as 317 Neb. 771

As a convicted felon it has been difficult to find employment opportunities. But I have worked extremely hard to avoid bankruptcy and will continue to do so.

The initial investigation, the litigation and appeals, have taken [their] toll. I have suffered emotionally and have worked with my therapist to adjust to my new "normal." The second guessing of how I got myself into this unusual situation consume[s] me. All the things I did, including the fateful decision to honor a request that I be much more tha[n] a lawyer for [J.R.K.], in hindsight [were] poor judgment on my part. At that time I was in over my head at a time in my life where I was distracted with other matters and trying to run a small law firm — although not very well as the record indicates.

I have thought a lot about how all of this affected [J.R.K.]. Having the [Adult Protective Services] worker question her repeatedly about things that she couldn't possibly have understood, given her developmental disability, must have been so confusing and frustrating for her. But the simple idea conveyed throughout was that someone she trusted might have betrayed her. That must have scared her and inhibited her ability to trust others providing for her care going forward. I never wanted that for her and am so sorry she was put through that.

It is true that I did not seek court approval for the compensation I received, but I honestly believed at the time of the actions in question, that I was permitted to do so. I also honestly believed I was carrying out the intentions of my co-trustee — [J.R.K.'s] stepfather. I also was carrying out the wishes of [J.R.K.'s] deceased mother.

The Supreme Court found otherwise, and I accept that decision. I will leave it to my lawyer to discuss aspects of that appeal that may have some effect on the outcome of this case. But I want the Court to understand that I did not take any of my actions in this matter with the

- 782 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
317 NEBRASKA REPORTS
STATE EX REL. COUNSEL FOR DIS. v. VANDERFORD
Cite as 317 Neb. 771

intention to harm [J.R.K.], nor to show any disrespect for the judicial process.

I pray that the Court conclude that my current suspension, together with the satisfaction of the requirement of my probation, be considered punishment and deterrence enough. I was a good and competent attorney. If allowed to continue in the practice of law, I will again become a credit to the legal profession and my community at large. I believe I have more good to give in this life and will strive to do this, regardless of the Court's decision.

I do not intend to engage in the private practice of law. Nor do I intend to ever take on any private fiduciary responsibility for a third party. I just want the chance to contribute positively in my legal endeavors like I once did, through my employment at my current company which has been so remarkable and kind to take me on under the circumstances.

Respectfully submitted,
Christine Vanderford

*Referee Report and Recommendation.*

The referee filed a report on March 6, 2024, in which he found that the allegations contained in the formal charges had been proved by clear and convincing evidence. The referee agreed with the relator and the respondent and concluded that disbarment would not be an appropriate sanction.

The report acknowledged the respondent's circumstances of trauma and mental health and noted the respondent's treatment with a licensed mental health professional, who reports the respondent has benefited, and continues to benefit, from this treatment.

The report recommended that the respondent's license to practice law should be suspended retroactively to the date of her temporary suspension on January 27, 2020. The referee noted that the respondent could be eligible for early release from probation in her criminal case in August 2024. The referee recommended that, following suspension, the respondent

- 783 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. VANDERFORD
Cite as 317 Neb. 771

complete her current regime of mental health treatment and be under monitored supervision by another attorney upon reinstatement.

*Motion for Judgment on the Pleadings.*

Neither party took exception to the referee's report. The parties filed a "Joint Motion for Judgment on the Pleadings" on March 8, 2024. The motion asked that no further suspension be issued and that the respondent be allowed to immediately apply for reinstatement pursuant to Neb. Ct. R. §§ 3-310(S) (rev. 2023) and 3-803(F) (rev. 2024), after which the Nebraska State Bar Commission can conduct a character and fitness review and make a recommendation to the court regarding any term of probation deemed appropriate.

On May 29, 2024, we granted the motion for judgment on the pleadings as to the facts, but not the disciplinary sanction. Thus, it is undisputed that the respondent violated her oath of office as an attorney licensed to practice law in the State of Nebraska as provided in § 7-104 and violated the provisions of the Nebraska Rules of Professional Conduct, see § 3-508.4(a) and (b), as set forth in the formal charges.

We directed the parties to brief the issue of discipline.

## ASSIGNMENT OF ERROR

There are no assignments of error, because neither party filed exceptions to the referee's report.

## STANDARDS OF REVIEW

[1,2] Because attorney discipline cases are original proceedings before this court, we review a referee's recommendations de novo on the record, reaching a conclusion independent of the referee's findings. *State ex rel. Counsel for Dis. v. Miller*, 316 Neb. 899, 7 N.W.3d 642 (2024). When a referee makes an express determination about the relative credibility of witnesses, we give weight to that determination in our de novo review, but are not bound by it. *State ex rel. Counsel for Dis. v. Chvala*, 304 Neb. 511, 935 N.W.2d 446 (2019).

- 784 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. VANDERFORD
Cite as 317 Neb. 771

## ANALYSIS

We previously granted judgment on the pleadings as to the facts alleged in the formal charges. The respondent does not challenge the truth of the referee's findings of fact. Based on the foregoing, we find that the facts recited above establish misconduct. The respondent violated her oath of office as an attorney licensed to practice law in the State of Nebraska as provided in § 7-104 and the following provisions of the Nebraska Rules of Professional Conduct on misconduct, § 3-508.4:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct[,] knowingly assist or induce another to do so or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects[.]

[3,4] Violation of a disciplinary rule concerning the practice of law is a ground for discipline. *State ex rel. Counsel for Dis. v. Miller, supra*. The basic issues in a disciplinary proceeding against an attorney are whether discipline should be imposed and, if so, the appropriate discipline under the circumstances. *Id*. Neb. Ct. R. § 3-304 of the disciplinary rules provides that the following may be considered as discipline for attorney misconduct:

(A) Misconduct shall be grounds for:

(1) Disbarment by the Court; or

(2) Suspension by the Court; or

(3) Probation by the Court in lieu of or subsequent to suspension, on such terms as the Court may designate; or

(4) Censure and reprimand by the Court; or

(5) Temporary suspension by the Court; or

(6) Private reprimand by the Committee on Inquiry or Disciplinary Review Board.

(B) The Court may, in its discretion, impose one or more of the disciplinary sanctions set forth above.

See, also, § 3-310(N).

- 785 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. VANDERFORD
Cite as 317 Neb. 771

[5,6] To determine whether and to what extent discipline should be imposed in an attorney discipline proceeding, we consider the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in the practice of law. *State ex rel. Counsel for Dis. v. Miller*, 316 Neb. 899, 7 N.W.3d 642 (2024). The purpose of a disciplinary proceeding against an attorney is not so much to punish the attorney as it is to determine whether it is in the public interest that an attorney be permitted to practice, which question includes considerations of the protection of the public. *Id*.

[7-9] With respect to the imposition of attorney discipline, each attorney discipline case must be evaluated in light of its particular facts and circumstances. *Id*. For purposes of determining the proper discipline of an attorney, we consider the attorney's actions both underlying the events of the case and throughout the proceeding, as well as any aggravating or mitigating factors. *Id*. The propriety of a sanction must be considered with reference to the sanctions imposed in prior similar cases. *Id*.

In light of the particular facts and circumstances in this case set forth in detail above, we suspend the respondent from the practice of law for a period beginning from the time she was temporarily suspended on January 27, 2020, to the date this opinion was filed.

## CONCLUSION

It is the judgment of this court that the respondent is hereby suspended from the practice of law from January 27, 2020, to the date this opinion was filed. The respondent is eligible to apply for reinstatement as of the date of this opinion, which application will be considered on the basis of a showing of her fitness to practice law and compliance with all requirements.

- 786 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. VANDERFORD
Cite as 317 Neb. 771

The respondent is directed to comply with Neb. Ct. R. § 3-316 (rev. 2014) of the disciplinary rules, and upon failure to do so, she shall be subject to punishment for contempt of this court. Accordingly, the respondent is directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 2022), as well as § 3-310(P) and Neb. Ct. R. § 3-323(B) of the disciplinary rules within 60 days after an order imposing costs and expenses, if any, is entered by the court.

Judgment of suspension.